UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMANDA COX,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>CASH FLOW INVESTMENTS, INC.,<br><br>　　　　　　Defendant. | CASE NO. C17-5495 RBL<br><br>ORDER ON SUMMARY JUDGMENT MOTIONS |

THIS MATTER is before the Court on Plaintiff Amanda[1] Cox's Motion for Partial Summary Judgment [Dkt. # 70] and on Defendants' Motion for Partial Summary Judgment [Dkt. # 73].

Amanda seek affirmative summary judgment in her favor on her **post-employment retaliation counterclaim** [Amanda's Answer to Counterclaim and Counterclaim in Reply, Dkt. # 46]. That claim asserts that Defendants **civil conspiracy counterclaim**[2] [Defendants' Answer,

---

[1] For clarity, this Order will refer to Plaintiff Amanda Cox as "Amanda" and Third Party Defendant Lukas Cox (Amanda's husband) as "Lukas." No disrespect is intended.

[2] Stephens and Cash Flow also asserted a parallel "collusion" counterclaim/third party claim against Amanda and Lukas. The parties do not differentiate between the claims and there is no apparent distinction between them. The Court will refer to both as the "civil conspiracy claim" for clarity. Additionally, Defendants asserted breach of fiduciary duty and WLAD claims against Lukas. The Court dismissed those claims with prejudice under Rule 12(b)(6). They also form part of the basis for Lukas's retaliation by association claim against Defendants.

Dkt. # 32] is itself retaliation against her for engaging in "protected activity": complaining to the EEOC, and suing Defendants in this case.

Defendants' Answer similarly asserted a **third party civil conspiracy** claim against Lukas, and he responded with a "**retaliation by association**" counterclaim [Dkt. # 55]. Lukas also seeks summary judgment in his favor on his retaliation by association claim. Amanda and Lukas also ask the Court to dismiss the Defendants' the civil conspiracy claims as a matter of law.

Amanda's Motion also seeks affirmative judgment in her favor on her **Equal Pay Act** claims, and the "protected activity" element of her **WLAD and Title VII retaliation** claims (these separate retaliation claims are based on Amanda's claim that Stephens retaliated against her for complaining about unequal treatment, before she was terminated). She also seeks summary judgment on Defendants' affirmative defenses [*see* Dkt. #s 32 (Answer) and 50 (Answer to Amanda's Counterclaim)]. She claims Defendants have failed to identify any evidence in support of these defenses, and that some are not actually affirmative defenses in any event.

For their part, Stephens and Cash Flow seek partial summary judgment dismissing Amanda's and Lukas's retaliation counterclaims as a matter of law. They claim that they "had no retaliatory motive" in filing these *compulsory* counterclaims. They also argue that the claims are grounded in law and fact, and that Amanda and Lukas cannot prove "but for" causation.

**A. Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with

respect to which she has the burden of proof. "[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

**B. Affirmative claims for Summary Judgment.**

The assorted, sordid accusations underlying the parties' claims and defenses have been amply described in various pleadings, briefs, and declarations. Each party accuses the other of fundamental dishonesty and worse. The ultimate accuracy of the parties' core positions—Defendants "subjected [Amanda] to pervasive sexual harassment and gender discrimination" [Amanda's Motion, Dkt. # 70 at 1], *vs.* "[a]t no time during her employment did Amanda experience sexual harassment, gender discrimination or a hostile work environment" [Defendants Motion, Dkt. # 73 at 1]—will necessarily await a jury's verdict. There are no undisputed facts in this case, and the factual underpinnings of the claims cannot be determined on the record.

Accordingly, the Court will not grant affirmative summary judgment on any party's own claim, counterclaim, counterclaim in reply, or affirmative defense. Amanda's Motion for Summary Judgment [Dkt. # 70] on her Equal Pay Act claim and both of her retaliation claims (post-employment retaliation and the "protected activity" portion of her pre-termination retaliation claim) is **DENIED**. Lukas's Motion for Summary Judgment on his retaliation by association counterclaim is similarly **DENIED**.

**C. Civil Conspiracy Claim.**

This leaves Amanda's and Lukas's Motions for Summary Judgment on Defendant's "civil conspiracy" counterclaim/third party claim against them, and Defendants' own Motion for

Summary Judgment seeking dismissal of Amanda's and Lukas's retaliation claim against *them*, which is largely[3] based on the assertion of that civil conspiracy claim.

The gist of Defendants' **civil conspiracy** claim is that Amanda and Lukas agreed to lie about what happened in order to obtain money damages in this lawsuit: "this case is a sham used to '*legally*' extort money from Tanner and Westside Pizza in retribution of Tanner firing Amanda." [Dkt. # 73 at 1].

Amanda correctly argues that it is defendants' burden to prove—by clear, cogent, and convincing evidence—that she and Lukas combined to accomplish an unlawful purpose and that they entered into an agreement to accomplish that conspiracy. *See All Star Gas, Inc. v. Bechard*, 998 P.2d 367 (2000). The Court must weigh the evidence against this heightened standard on summary judgment. *Anderson*, 477 U.S. 242, 254-55 (1986).

Defendants' Response argues that their conspiracy claim is "**grounded in fact and law**." [Dkt. # 75 at 10, emphasis in original]. They claim they instituted their counterclaims only after they discovered that plaintiff had engaged in unlawful conduct. They rely on a single case for the proposition that in doing so, they did not retaliate against Amanda. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106 (10th Cir. 2007). *Timmerman* deals with an allegedly retaliatory counterclaim against the plaintiff, but it is not a "civil conspiracy counterclaim" case. It does not support the Defendants' claim that the evidence in this case meets the clear cogent and convincing standard for its civil conspiracy claim.

---

[3] Amanda's retaliation claim is based on the Defendants' civil conspiracy counter claim. Lukas's retaliation by association claims is based on the third party civil conspiracy claim *and* on the already-dismissed WLAD and breach of fiduciary duty third party claims against him.

That claim is based on the following evidence[4]: (1) In 2013, Amanda lied about "being drugged," falling and hurting her face. Defendants claim she actually took Paxil with alcohol and that she continues to exaggerate her injuries. (2) Amanda claimed she complained about discrimination to a number of Westside Pizza employees, but not to Lukas. Only after the Court dismissed the Defendants' breach of fiduciary duty and WLAD claims against Lukas[5] did she begin to claim that she reported the harassment to Lukas. However, the Defendants' conspiracy claim against Amanda and Lukas predates the Court's Order by three months. (3) Amanda has commandeered and altered a "squirting jelly filling" incident, claiming it happened in her presence, but Defendants claim it actually happened prior to her employment, and at a different restaurant, and with different facts. (4) Amanda and Lukas "made up" a claim based on a "sex bet" about which Westside Pizza employee would sleep with Amanda first. Defendants claim that Amanda's and Lukas's stories on this claim are not consistent and are evolving, and that they are not supported by the other alleged witnesses' accounts. (5) Amanda and Lukas have failed to provide all of the text messages Defendants requested in discovery, and their reasons for the omission have changed over time and are inconsistent with each other.

As it was when considering its plausibility under Rule 12, the Court is troubled by the lack of legal authority for this claim. Defendants have not pointed to any authority from any jurisdiction even suggesting that a defendants' promised (or even demonstrated) ability to "poke holes" in a plaintiff's version of events supports a civil conspiracy counterclaim. The fact that a

---

[4] Defendants also claim that Amanda's stated intention not to introduce at trial any evidence that Lukas sexually harassed her is itself proof of a conspiracy. The Court does not follow this argument. Defendants will apparently introduce evidence that Lukas called Amanda "Roofie," and will make whatever argument they can out of that. But it is unlikely that her legal briefing will be admitted at trial and even if it were, it is not clear, cogent, and convincing evidence of a civil conspiracy.

[5] Defendants claim that this change in testimony came only "after potential liability for Lukas was removed," but the Court's prior order [Dkt. # 45] "removed" only two of the three affirmative claims they asserted against Lukas. The civil conspiracy claim remains, and is the subject of this order.

defendant can effectively cross examine a witness to show bias, exaggeration, or even dishonesty is not the same as clear cogent and convincing proof that the plaintiff, her witnesses, and her legal team conspired to "extort" money. As Amanda argues, this is what every litigant seeks to do to every adversary in almost every case—certainly in every employment discrimination case. A defendant's confidence that his cross-examination of the plaintiff will torpedo her case and lead to a defense verdict is not enough to support a civil conspiracy counterclaim and a similar third party claim against her primary witness.

There are any number of more traditional correctives for defending an actually frivolous claim. These include a motion for sanctions under Fed. R. Civ. P. 11; or a claim under fee-shifting statutes like RCW 4.84.185. Proven discovery abuses are remediable under Fed. R. Civ. P. 37. And, though such claims are "disfavored," a defendant can assert a malicious prosecution counterclaim against a plaintiff who maliciously sues without probable cause (though he *cannot* do so based solely on invalid factual allegations). *See* RCW 4.24.350; *Brin v Stultzman*, 951 P.2d 901 (1989).

There are other issues as well. Amanda argues Defendants have not provided any evidence of damages, a necessary component of their civil conspiracy claim. Defendants argue this too is "patently false": They claim that they described damages in their initial pleading and that they notified plaintiff of their damages—loss of reputation and lost profits—in a prior brief [Dkt. # 75 at 22, referring to Dkt. # 37 (sic; 39) at 7.] That brief states only:

> "Defendants have suffered pecuniary damages, including those arising in loss of reputation and loss of profits."

[Dkt. # 39 at 7]. Defendants also rely on Stephens Declaration, which essentially repeats this claim:

> 32. Both Westside Pizza and I have suffered damages due to the civil conspiracy. Westside Pizza has had a loss of reputation, lost profits, and legal expenses. My personal damages included pain and suffering, to include a loss of enjoyment of life, and legal expenses.

[Dkt. # 76-1 at 60] This is not evidence; it is a conclusion. There is no proof of any damage.

Defendants have not demonstrated that their civil conspiracy claim is grounded in either fact or law. They have no authority supporting the claim, even conceptually. Their apparent ability to demonstrate that several aspects of Amanda's story are not true does not amount to clear cogent and convincing evidence of a civil conspiracy, as a matter of law. They have no proof of damage.

Amanda's and Lukas's Motion for Summary Judgment [**Dkt. # 70**] on Defendants' **civil conspiracy** counterclaim against Amanda (and on their third party civil conspiracy claim against Lukas) is **GRANTED** and those claims are **DISMISSED** with prejudice.

**D. Affirmative defenses.**

Amanda and Lukas seek summary dismissal of Defendants' affirmative defenses [Dkt. #s 32 (23 such defenses) and 50 (eleven)]. They claim, and demonstrate [Anderson Dec. and Exhibits, Dkt. # 71], that they sought evidence in support of these affirmative defenses, and that Defendants did not provide such evidence. They emphasize that defendants bear the burden of proof on each of these defenses.

Amanda and Lukas argue they are required to do no more than "demonstrate" the lack of evidence supporting an essential element of the affirmative defenses to place on Defendants the burden of demonstrating there are questions of fact supporting their potential viability. Defendants argue that Amanda has "bastardized" the standard, and argue that she must "provide *evidence* to prove that there is an absence of evidence to support the non-moving party's case."

[Dkt. # 75 at 29 (emphasis in original), *citing In re Oracle Corp Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)].

This is not a direct quote and it is not entirely correct. *Oracle* simply reiterated the long-standing rule: "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id*. at 387. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Defendants' claim that it can keep its affirmative defenses "in play" without providing evidence of them is simply not correct. Their response does not claim to provide any evidence in support of its list of affirmative defenses; it instead claims Amanda has not evidence of the lack of evidence. Defendants have not provided any evidence supporting their affirmative defenses. Their reliance on their own pleadings and characterizations as factual and legal support for their claims is insufficient as a matter of law.

The Motion for Summary Judgment on Defendants' affirmative defenses [Dkt. # 70] is GRANTED and those defenses are DISMISSED.

**E.  Retaliation.**

Defendants' own Motion [Dkt. # 73] seeks summary Judgment on Amanda's and Lukas's retaliation claims. They argue repeatedly that "they had no retaliatory intent" and that the counterclaim and third party claims were filed "without retaliatory motive." Amanda points to Stephens' admission that the counterclaim was a response to Amanda's "false" claim against him, both at the EEOC and in this suit. There is evidence from which a jury could find that the

civil conspiracy claim (an "adverse action," like the prior WLAD and breach of fiduciary duty claims) was filed in response to—because of—Amanda's EEOC charge and/or the discrimination lawsuit. Defendants' argument that the claims were compulsory does not demonstrate a "legitimate non-discriminatory reason for the counterclaim" as a matter of law. *Timmerman* does not hold that a retaliation claim cannot be based on a counterclaim. The Defendants' Motion for Summary Judgment [Dkt. # 73] on Amanda's **retaliation** counterclaim, and on Lukas's retaliation by association counterclaim, is **DENIED**.

IT IS SO ORDERED.

Dated this 21st day of December, 2018.

Ronald B. Leighton
United States District Judge